**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   Criminal Action No. 5:14-cr-49

THADDEUS EMRYS RICHARDSON,

    Defendant.

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Defendant's motion to suppress evidence filed on January 22, 2015.[1] The United States (hereinafter "the Government") filed a response to the Defendant's motion on February 2, 2015.[2] This Court held an evidentiary hearing and argument on the Defendant's motion on February 5, 2015. The Defendant appeared in person and by his counsel Brendan S. Leary, Esq. The Government appeared by David J. Perri, Esq., in person. The Government presented the testimony of Wheeling Police Department Officer Eric Burke ("Officer Burke"). During the hearing, this Court admitted the Defendant's Exhibit One (an August 7, 2014, incident report by Officer Burke). No additional testimony or evidence was presented at the hearing.

**I. INTRODUCTION**

**A. Background**

On October 7, 2014, the Defendant was named in a one count indictment plus forfeiture allegations charging him with being a drug user in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and possession with intent to distribute cocaine base,

---

[1] ECF No. 19.

[2] ECF No. 24.

in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C). An initial appearance was held on October 30, 2014. The Defendant was released on bond subject to conditions of release. The Defendant now moves this Court to suppress evidence seized from the Defendant by Officer Burke on August 7, 2014.[3]

**B. The Motion**

The Defendant's motion to suppress evidence. ECF No. 19.

**C. Recommendation**

I recommend that the Defendant's motion to suppress evidence be **DENIED** because reasonable suspicion existed for Officer Burke's *Terry* stop and frisk of the Defendant.

## II. FINDINGS OF FACT

On August 7, 2014, Officer Burke was parked and patrolling the intersection of 16th and Market Streets in Wheeling, West Virginia. At 1:07 a.m., Officer Burke noticed one man and one woman, later identified as the Defendant Thaddeus Emrys Richardson and Jessica Estep, walking from Market Street towards 15th Street Place, a narrow, one way alley connecting Main and Market Streets. The alley is located between two commercial buildings. At night, the alley is completely dark and typically littered with garbage and drug paraphernalia. A small stairway leading to a back door is located on the side of the alley.

According to testimony, the alley was known to Officer Burke as an location for drug activity, prostitution, open container, and public urination and defecation. Officer Burke began to drive north on Market Street and, on his left, passed Defendant and Ms. Estep as they walked into

---

[3] On January 30, 2015, the United States Probation Office filed a petition alleging the Defendant violated conditions of his pretrial release. On February 5, 2015, the Defendant appeared for an initial appearance and a bond revocation hearing was held on February 10, 2015.

the alley. Believing a possibility of drug use or prostitution, Officer Burke began to investigate. Officer Burke continued on Market Street and turned left on 14th Street. Officer Burke made another left and temporarily stopped at the intersection of 14th and Main Streets. While stopped, Officer Burke did not see the Defendant or Ms. Estep walk onto Main Street from the alley. Therefore, Officer Burke believed the two remained in the alley.

Officer Burke turned his police vehicle's lights off and drove into 15th Street Place from Main Street. Soon after, Officer Burke spotted Ms. Estep sitting on the small stairway located in the alley. Officer Burke turned on his police vehicle's spotlight and exited the vehicle. After "a few steps," Officer Burke saw the Defendant near the end of the alley. The Defendant's back was turned to Officer Burke. Officer Burke was unable to see the Defendant's hands. Officer Burke asked the Defendant what he was doing. The Defendant remarked that he was "taking a piss." Officer Burke told the Defendant to come towards him. The Defendant turned and began to walk towards Officer Burke. While walking towards the Officer, the Defendant continually reached into his front left pocket. Officer Burke instructed the Defendant to keep his hands out of his pockets. The Defendant complied. Once the Defendant reached Officer Burke, the Officer told the Defendant that he "was going to be frisked for weapons."

Next, Officer Burked pulled the Defendant in front of him and began to frisk. Officer Burke attempted to interlace the Defendant's hands over his head, however, the Defendant's hands were wet and he tensed his fingers in a way that prevented Officer Burke from interlacing the Defendant's hands. The Defendant's right leg was also shaking. While frisking, Officer Burke asked the Defendant "what he had on him that he was not supposed to have." The Defendant responded that he had "a little bit of weed." Because of the Defendant's movements, Officer Burke was unable to

3

complete the frisk, instead, he attempted to detain the Defendant with handcuffs. While doing so, the Defendant pulled free and began to run westbound towards Main Street. Around this time, another officer arrived at the scene and both officers began to chase the Defendant. The Defendant was quickly apprehended and forced onto the ground. In the struggle, the officers kneed the Defendant, attempting to grab his hands and secure them in handcuffs.

Once the Defendant was restrained, Officer Burke continued his frisk of the Defendant. According to Officer Burke's police report, marijuana, "stamp bags" of heroin, ammunition, crack cocaine, prescription pills, and a knife were all found on the Defendant. Next, the officers searched the rest of the alley. The officers discovered a backpack containing marijuana, prescription pills, bags, syringes, and a spoon. A 7.65 millimeter pistol was also found near the backpack. Defendant was arrested and later charged with being a drug user in possession of a firearm and ammunition and possession with intent to distribute cocaine base.

### III. MOTION TO SUPPRESS

**A. Contentions of the Parties**

The Defendant argues that Officer Burke's stop and frisk of the Defendant was unlawful under the Fourth Amendment of the United States Constitution. Specifically, the Defendant contends that Officer Burke had no reasonable or articulable suspicion that the Defendant was engaged in criminal activity, violating the Supreme Court doctrines established in *Reid v. Georgia*, 448 U.S. 438 (1980) and *Terry v. Ohio*, 392 U.S. 1 (1968). Additionally, the Defendant contends that the facts of this case are similar to *United States v. Massenburg*, 654 F.3d 480, where the Fourth Circuit held that the officer's nonconsensual frisk of suspect was not supported by reasonable suspicion of criminal activity. The Government argues that Officer Burke acted appropriately within the scope

of the Fourth Amendment. The Government contends that the totality of the circumstances known to Officer Burke justified the *Terry* stop and frisk of the Defendant.

**B. Discussion**

"The Fourth Amendment permits an officer to make an investigative detention or stop only if supported 'by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.'" *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011) (quoting *Reid v. Georgia*, 448 U.S. 438, 440 (1980)).[4] "Moreover, in connection with such a stop, if the officer believes that the person being stopped 'may be armed and presently dangerous,' the officer may frisk the person by patting his outer clothing 'in an attempt to discover weapons which might be used to assault [the officer].'" *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

"When discussing how reviewing courts should make reasonable-suspicion determinations . . . [courts] must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). The Fourth Circuit has called reasonable suspicion "a commonsensical proposition." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

Although officers are encouraged to "draw on their own experience and specialized training

---

[4] The undersigned agrees with Defense counsel that the proper analysis in this case is to determine whether Officer Burke conducted a lawful *Terry* stop and frisk of the Defendant. During the initial frisk, Officer Burke articulated that he was not arresting the Defendant for public urination, but, instead, was frisking the Defendant "for weapons." However, if Officer Burke had arrested the Defendant for public urination, a minor offense, it is likely Officer Burke would have been permitted to conduct a search of the Defendant incident to arrest, a well established exception to the warrant requirement of the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164 (2008) (finding that an arrest for driving on suspended license did not violate the Fourth Amendment, even though state law required issuance of summons rather than an arrest); *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979) (holding that "an arresting officer may, without a warrant search a person validly arrested.").

5

to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person . . . a mere hunch is insufficient to justify a stop." *Arvizu*, 534 U.S. at 273-74 (internal quotation marks omitted). However, "[t]he Supreme Court has consistently rejected the notion that courts can second-guess police officers by speculating on possible innocent reasons for a defendant's actions." *United States v. Perkins*, 363 F.3d 317, 327 (4th Cir. 2004). "Officers, in other words, are not required to rule out all possibility of innocent conduct or to wait until criminal activity actually occurs before responding to a suspicious set of circumstances." *Id.*

Cases that question that validity of a *Terry* frisk are highly fact intensive. "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 1530 (2014) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Therefore, for clarity, this Court will address each of the relevant facts in turn before evaluating them in total. However, the undersigned recognizes that "[i]t is the entire mosaic that counts, not single tiles," *United States v. Whitehead*, 849 F.2d 849, 858 (4th Cir. 1988), and a *Terry* stop and frisk cannot be found "unjustified based merely on a piecemeal refutation of each individual fact and inference." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (internal quotation marks omitted).

In reviewing the evidence and testimony in this matter, it appears to the undersigned that Officer Burke relied on four facts, when taken together, led him to initiate the investigative stop and frisk: (1) the time of night the Defendant was discovered by Officer Burke; (2) the area where the Defendant and Ms. Estep were walking was a high crime area; (3) suspicion of criminal activity and the Defendant's contention he was simply urinating in the alley; and (4) when walking towards

Officer Burke, the Defendant continuously reached into his left from pocket. This Court will address each of these facts in turn.

*1. Time of Night*

"The lateness of the hour is . . . [a] fact that may raise the level of suspicion." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). In *Lender*, the Fourth Circuit found that an officer observing a defendant walking around a "known drug area at nearly 1:00 a.m." was relevant in determining reasonable suspicion. *Id.* Here, Officer Burke testified that he first noticed the Defendant walking near 15th Street Place just after 1:00 a.m. Therefore, just as in *Lender*, the time in which these events took place is an important factor in determining reasonable suspicion.

*2. High Crime Area*

"While the defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's propensity toward criminal activity is something that an officer may consider." *Lender*, 985 F.2d at 154; *see also United States v. Black*, 525 F.3d 359, 365 (4th Cir. 2008); *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004); *United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000). A "high crime area" has also been defined as "an area of expected criminal activity . . . ." *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005); *see also United States v. Ford*, 333 F.3d 839, 841 (6th Cir. 2003) (finding that a skating rink could be a high-crime area because "gang members have been known to patronize the rink, and screwdrivers and knives have been found by the owner near the Roller Dome's dumpster").

The evidence in this case shows that 15th Street Place is a high crime area and an important factor in determining reasonable suspicion. Although Officer Burke testified that he has not arrested anyone in 15th Street Place, he has arrested individuals "right in that area." Further, Officer Burke

testified that he had knowledge from other officers that 15th Street Place was a frequent place for drug activity, prostitution, open container, and public urination and defecation.

*3. Suspicion of Criminal Activity*

Based on their experience, an observation by an officer of what appears to be criminal activity may contribute to the reasonable suspicion analysis. *See Terry*, 392 U.S. at 22-23; *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987). "A police officer, however, is not constitutionally required to be certain that a crime has occurred when he makes a stop." *Moore*, 817 F.2d at 1107. Even if an officer can not see drugs or other criminal activity, an officer, in the absence of probable cause, is not required to "simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

Here, Officer Burke testified that he began to investigate the Defendant because he suspected the Defendant may be partaking in criminal activity, namely drug activity or prostitution. When Officer Burke finally confronted the Defendant, the Defendant's back was turned to Officer Burke and the Defendant only remarked that he "was taking a piss." Although public urination is a minor offense, it is an offense nonetheless. Surely it is relevant to the reasonable suspicion analysis if Officer Burke was authorized to stop and arrest the Defendant for public urination, but instead frisked the Defendant on other grounds. *See Virginia v. Moore*, 553 U.S. 164 (2008) (finding that an arrest for driving on suspended license did not violate the Fourth Amendment, even though state law required issuance of summons rather than an arrest). These facts suggest this factor is in part relevant in determining reasonable suspicion.

*4. The Defendant Continually Reaching Into His Pocket*

A "security check," is "an instinctive check by [a suspect] to see that his weapon was in

8

place." *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) (finding officers had probable cause to arrest defendant because he was located in a high-crime area, smelled of marijuana, and patted his waist area, interpreted by officers to be a "security check."). The movement of a suspect's hands towards a pocket can be interpreted as a security check. *See United States v. Oglesby*, 597 F.3d 891, 895 (7th Cir. 2010) (finding that the arresting officer "clearly had articulable facts upon which he could reasonably suspect that [defendant] was armed or dangerous" when defendant, among various suspicious actions, "repeatedly lowered his right toward the right pocket of his pants."). Other actions by a suspect, such as clutching his waistline or reaching underneath his jacket, are also probative factors in determining reasonable suspicion. *See United States v. Briggs*, 720 F.3d 1281, 1289 (10th Cir. 2013) (finding that defendant's "hand movements toward his waistline were relevant to the totality of the circumstances known to [the officer] at the time of the detention."); *United States v. Padilla*, 548 F.3d 179, 189 (2d Cir. 2008) (holding an investigative stop was justified when, among other relevant factors, an officer "observed [defendant] reach underneath his jacket and shirt and adjust a weighty object concealed at the center of his waistline.").

In this case, as the Defendant approached Officer Burke, the Defendant *continuously* reached into his front left pocket. The action of a defendant repeatedly lowering his hands into a front pocket is relevant in determining reasonable suspicion. *See Oglesby*, 597 F.3d at 895; *Humphries*, 372 F.3d at 660. The record clearly reflects that such action by the Defendant reasonably indicated to Officer Burke that the Defendant might be carrying a weapon. For protection, Officer Burke ordered the Defendant to keep his hands out of his pockets. Therefore, the movement of Defendant's hand continuously reaching into his front right pocket can be reasonably interpreted as a "security check" and is relevant in considering whether the officers had reasonable suspicion to conduct an

9

investigative stop. *Id.*

*5. Totality of the Circumstances Support that Officer Burke's Stop and Frisk was Proper*

In this case, all four facts discussed are relevant in concluding that Officer Burke had reasonable suspicion to conduct a *Terry* stop and frisk of the Defendant. Just after 1:00 a.m., Officer Burke witnessed the Defendant and Ms. Estep walk into a narrow alley known for drug activity, prostitution, and other minor crimes. When confirming that the Defendant did not walk through the alley, and in fact, was still in the alley after an unreasonable period of time, Officer Burke began to investigate. Once in the alley, Officer Burke saw the Defendant with his back turned. After inquiring what the Defendant was doing, the Defendant merely stated he was merely "taking a piss." Soon after, once the Defendant was walking towards Officer Burke, he continuously reached into his front pocket and only stopped once ordered to. These actions led to the initial stop and frisk of the Defendant.

"The standard of 'reasonable suspicion' as used to evaluate the constitutionality of a *Terry* stop is not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails common sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). Based on this approach, the facts cited by the Government support that reasonable suspicion was met when Officer Burke stopped and frisked the Defendant. Like in *Moore*, "[t]he circumstances surrounding the stop support the officer's belief that a further frisk for weapons was warranted. The hour was late, the street was dark, the officer was alone," and the suspected crime was drug activity or prostitution, crimes that frequently involve weapons. 817 F.2d at 1108. Here, the officer's only purpose in attempting to frisk the Plaintiff was for protection and

to search for weapons. As *Terry* concluded:

> [w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24.

The Defendant cites *United States v. Massenburg*, 654 F.3d 480, to contend that the facts in this case do not rise to reasonable suspicion. However, unlike the singular "self-pat down" in *Massenburg*, the Defendant in this case repeatedly moved his hand into his front pocket while walking towards Officer Burke. *Id.* at 491. Further, *Massenburg* concluded that "[g]enuinely suspicious behavior, occurring in a high-crime neighborhood after a tip concerning gunfire, would certainly justify a *Terry* stop and almost certainly a frisk of the detainee." *Id.* The facts of this case do not conflict with *Massenburg*. Thus, when considering the totality of the circumstances, the undersigned finds that the evidence does rise to the level of reasonable suspicion and Officer Burke's *Terry* stop and frisk of the Defendant was proper under the law, particularly because of the Defendant's continuous reaching into his front pocket.

## IV. RECOMMENDATION

For the reasons described above, the undersigned recommends that the Defendant's motion to suppress evidence, ECF No. 19, be **DENIED**.

Because trial is imminent, any party who appears *pro se* and any counsel of record, as applicable, may, by February 25, 2015, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record.

Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: February 11, 2015          /s/ *James E. Seibert*
                                                JAMES E. SEIBERT
                                                UNITED STATES MAGISTRATE JUDGE