IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                 Criminal Action No. 5:14CR49
                                                                          (STAMP)

THADDEUS EMRYS RICHARDSON,

    Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE TO SUPPRESS EVIDENCE,
OVERRULING OBJECTIONS THERETO AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS**

I. Procedural History

The defendant, Thaddeus Emrys Richardson ("Richardson"), was indicted in a two-count indictment plus forfeiture allegation charging him with being a drug user in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and possession with intent to distribute cocaine base, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

The defendant thereafter filed a motion to suppress evidence obtained during a stop-and-frisk of the defendant. The government timely filed a response. United States Magistrate Judge James E. Seibert then held a hearing on the defendant's motion. Following this hearing, the magistrate judge issued a report and recommendation which recommended that this Court deny the

defendant's motion to suppress. The defendant timely filed objections thereto.

Given the rapidly approaching trial date, this Court entered a letter informing the parties that it was denying the defendant's motion to suppress, adopting and affirming the report and recommendation, and overruling the defendant's objections. This order sets forth those findings in more detail.

## II. Facts

Richardson argues in his motion to suppress that this Court should suppress evidence acquired after a stop-and-frisk of Richardson in downtown Wheeling, West Virginia. According to the parties, a Wheeling Police Officer, Erick Burke ("Burke"), was patrolling downtown Wheeling when he observed Richardson and a woman, Jessica Estep ("Estep"), walking in an alley westbound around 15th Street. Burke circled around the block and observed Estep sitting on a set of stairs in the alley and Richardson at the end of the alley with his back turned to Burke. Burke asked Richardson what he was doing at the back of the alley and Richardson stated: "Taking a piss." As Burke approached Richardson, Richardson placed his hands in his pocket (the government says he was "continuously" placing his hands in his pocket) and Burke then frisked Richardson for weapons. The government asserts that Richardson then attempted to flee and Richardson would not unlock his hands and his leg was shaking. On

2

Richardson's person, Burke found marijuana, heroin, crack cocaine, money, and ammunition.  Further, a search of the alley resulted in the seizure of a backpack that contained marijuana, ammunition, empty bags, syringes, and a silver spoon.  A further search of the alley resulted in the seizure of a Deutsche Werke Werk Erfurt 7.65 mm pistol.

Richardson contends that the Terry[1] stop violated his Fourth Amendment rights as his conduct did not rise to the level of reasonable suspicion necessary for such a stop.  Richardson cites the United States Court of Appeals for the Fourth Circuit's Massenburg decision.  United States v. Massenburg, 654 F.3d 480 (4th Cir. 2011).  Richardson asserts that in this case, Richardson submitted to Burke's command to take his hand out of his pocket but that Richardson did not consent to the frisk.  Further, Richardson contends that the only information Burke had was that (1) it was late, (2) Richardson was in a high crime area, and (3) Richardson complied with his orders to come out of the alley and take his hand out of his pocket.  Richardson asserts that this information alone was not enough to support a particularized reasonable suspicion that Richardson was involved in criminal activity.

In response, the government argues that Burke's knowledge of criminal activity, which included prostitution, and experience in patrolling that alleyway, along with the time of night (1:00 a.m.)

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

and the fact that the two individuals were a woman and man, led him to suspect prostitution or drug activity, or both. When Burke approached, Richardson had his back to him in a narrow obstructed alleyway, which the government contends gave him enough information to complete an investigatory stop. Thereafter, once Burke learned that Richardson had violated a Wheeling City Ordinance, by urinating in public, and Richardson was approaching the officer, the government asserts that Burke was entitled to complete a frisk of Richardson for weapons for his own safety.

In his report and recommendation, the magistrate judge noted four facts that Burke relied on: (1) the time of night, (2) the area was a high crime area, (3) suspicion of criminal activity and Richardson's response to Burke that he was urinating in public, and (4) Richardson's continual reaching into his pocket. The magistrate judge found that the time of night is an important factor in determining reasonable suspicion, relying on United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Next, the magistrate judge found the high crime in that area as an important factor given Burke's knowledge of the area from other officers arresting persons in that alleyway and area in close proximity and the fact that he had arrested individuals "right in that area." Further, the magistrate judge found that, pursuant to Moore, Richardson's public urination, although a minor offense, was still an offense that could provide Burke with reasonable suspicion which

authorized a stop-and-arrest or a frisk.  <u>United States v. Moore</u>, 817 F.2d 1105, 1007 (4th Cir. 1987).  Finally, the magistrate judge determined that Richardson's continual lowering of hands and reaching into his pocket reasonably indicated to Burke that Richardson might be carrying a weapon and that a security check was necessary.  The magistrate judge found that all of these facts, taken together, rose to reasonable suspicion to support a stop-and-frisk of Richardson.

In his objections, Richardson asserts that the magistrate judge relied on the correct factors but came to an incorrect conclusion.  Richardson first argues that the fact that he and Estep had not exited within a certain amount of time was not a sign of nefarious activity but could have just been the two using another exit from the alleyway.  Further, Richardson contends that Burke did not pat down Richardson because he believed Richardson had committed a crime, public urination, but rather because he had a mere hunch that Richardson was engaged in criminal activity which is not enough to arise to the level of reasonable suspicion.  Finally, Richardson contends that reaching toward his pocket was not suspicious as there was no evidence that he was reaching for a weapon rather than, for example, car keys or a piece of chewing gum.

This Court now affirms and adopts the report and recommendation of the magistrate judge in its entirety. Consequently, defendant's motion to suppress are each denied.

III. Applicable Law

Under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress evidence and statements as unconstitutionally obtained. After the magistrate judge has considered such a motion, he must submit '"proposed findings of fact and recommendations for the disposition.'" Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the 14-day period allotted by the Act, the district court shall make a de novo review of the findings and recommendations objected to. Id. and 28 U.S.C. § 636(b)(1)(C). Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(C).

Here, the defendant filed objections to the magistrate judge's report and recommendation concerning the motion to suppress evidence and the United States filed objections to the magistrate judge's report and recommendation concerning the motion to suppress statements. All findings challenged by these objections will be reviewed de novo.

IV. <u>Discussion</u>

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Supreme Court of the United States has further articulated that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is also referred to as a <u>Terry</u> stop. <u>Terry</u>, 392 U.S. 1. A <u>Terry</u> stop has been held to be constitutional when the policeman's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. <u>United States v. Sokolov</u>, 490 U.S. 1, 7 (1989). In defining reasonable suspicion, the court has stated:

> The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.

<u>Alabama v. White</u>, 496 U.S. 325, 329-30 (1990) (quoting <u>INS v. Delgado</u>, 466 U.S. 210, 217 (1984)).[2]

---

[2]Further, the court noted that:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is

7

To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." Id. (citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

The defendant has conceded in his objections that the magistrate judge reviewed the correct factors relied upon by Burke in instituting the investigative stop. This Court will thus consider those factors as this Court finds that the consideration of those four factors was appropriate given the underlying facts of this case.

A. <u>Time of Night</u>

---

less reliable than that required to show probable cause. White, 496 U.S. at 330 (citing Adams v. Williams, 407 U.S. 143 (1972).

The defendant's objections do not specifically address the magistrate judge's determination that the time in which the events occurred was an important factor in determining reasonable suspicion. As the Fourth Circuit has found that "[t]he lateness of the hour is . . . [a] fact that may raise the level of suspicion[,]" this Court finds that the magistrate judge's finding was not clearly erroneous. <u>Lender</u>, 985 F.2d at 154. Burke first noticed Richardson and Estep at 1:07 a.m. The Fourth Circuit has upheld a finding that activity in a "known drug area at nearly 1:00 a.m." is a relevant factor for determining whether or not reasonable suspicion existed. <u>Id.</u> As such, the magistrate judge's finding was appropriate and this Court will consider the time of night as an important factor in making a finding that reasonable suspicion existed.

B.  <u>High Crime Area</u>

Richardson asserts that Burke was unaware of any criminal activity that was afoot when he first observed Richardson and Estep turn into the 15th Street alley and that Burke only knew that the two were in a high crime area. A defendant's presence in a high crime area, standing alone, "may not be the basis for reasonable suspicion to stop anyone in the area . . ." <u>United States v. Mayo</u>, 361 F.3d 802, 807 (4th Cir. 2004) (citing <u>Brown v. Texas</u>, 443 U.S. 47, 52 (1979)). "[I]t is[, however,] a factor that may be considered along with others to determine whether police have a

9

reasonable suspicion based on the totality of the circumstances." Id. (citing Wardlow, 528 U.S. at 124).

Here, the evidence gathered through the evidentiary hearing provides that (1) the 15th Street alley was in a high crime area, (2) Burke had not arrested anyone in that area but had arrested individuals "right in that area," and (3) Burke had knowledge from other officers that the area was a frequent place for drug activity, prostitution, open container, and public urination and defecation. Burke's experience and knowledge of the area as a high crime area is sufficient to allow such consideration to be used as a factor in this Court's determination of whether reasonable suspicion existed in this case.

C. <u>Suspicion of Criminal Activity and the Defendant's Response</u>

Richardson first argues that the fact that he and Estep had not exited within a certain amount of time was not a sign of nefarious activity but could have just been the two using another exit from the alleyway. The Supreme Court has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" Navarette v. California, 134 S.Ct. 1683, 1688, 1691 (2014) (quoting United States v. Arvizu, 534 U.S. 266, 277 (2002)). Thus, given Burke's knowledge that the area was used for drug activity and prostitution, Burke was not required to rule out the possibility of innocent conduct in order for his conduct to rise to the level required for reasonable suspicion.

Terry, 392 U.S. at 22-23 (an observation by an officer of what appears to be criminal activity may contribute to the reasonable suspicion analysis).

Richardson next argues that Burke's reliance on Richardson's statement that he was "taking a piss" was misplaced pursuant to the Fourth Circuit's decision in Mayo, 361 F.3d at 807. Richardson contends that under Mayo more is required than the previous holding in Moore, wherein the Fourth Circuit held that "a police officer . . . is not constitutionally required to be certain that a crime has occurred when he makes a stop." Moore, 817 F.2d at 1007. Thus, Richardson asserts that his uncorroborated statement taken without other evidence, such as Burke actually observing the public urination or any other crime, was insufficient to arise to the level of reasonable suspicion.

This Court must disagree with Richardson's application of Mayo in this instance. Although Mayo does hold that "[t]o conduct the protective frisk there must also be reasonable grounds to believe that the suspect is armed and dangerous," the Fourth Circuit based such a decision on its revisiting of Burton wherein "the officers readily conceded . . . that Burton 'exhibited no evasive or suspicious behavior and [that] there was no indication that he was at the time engaging in any illegal activity.'" Mayo, 361 F.3d at 806 (citing United States v. Burton, 228 F.3d 524, 527 (4th Cir. 2000)). In this case, Burke did not simply approach Richardson for

11

his own safety, although there was sufficient evidence to support a safety frisk based on Richardson's continual reaching into his pocket which is addressed in the next section.

The evidence shows that Burke also relied on Richardson's statement that he had just committed a state crime, urinating in public. Although, "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused[,]" the more stringent standards of probable cause or guilt beyond a reasonable doubt are not applicable in reviewing whether a police officer had reasonable suspicion to conduct a Terry stop. Wong Sun v. United States, 371 U.S. 471, 488-89 (1963); Mayo, 361 F.3d at 806 (citation omitted) ("At bottom, the basis for a Terry stop is that the officer have a 'reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'").

In this case, Richardson's statement, his location in the alley, and his stance with his back to Burke, were enough to support a reasonable suspicion that Richardson had just committed the state crime of urinating in public. This Court is not required to find that probable cause existed in the absence of Burke actually observing Richardson urinating. This Court must only find that there was reasonable suspicion that Richardson had urinated in public, therefore violating an ordinance, which is present here. As such, this Court upholds the magistrate judge's finding that

this factor may be used in the determination of whether reasonable suspicion existed.

D.   The Defendant's Continual Reaching Into His Pocket

Richardson contends in his objections that reaching toward his pocket was not suspicious as there was no evidence that he was reaching for a weapon rather than chewing gum or his car keys. Again, "reasonable suspicion 'need not rule out the possibility of innocent conduct.'" Navarette, 134 S.Ct. at 1688, 1691 (quoting Arvizu, 534 U.S. at 277). Further, this is not the case, as the defendant argues where the government is "using whatever facts are present, no matter how innocent, as indicia of suspicious activity." Foster, 634 F.3d 243, 248 (2011).

As the magistrate judge noted, a "security check" is "an instinctive check by [a suspect] to see that his weapon was in place." United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004). A security check may be evidenced by the repeated movement of a suspect's hands towards a pocket, the patting of a waistband by the suspect, or reaching underneath his jacket.[3] Here, Richardson continuously reached toward his front left pocket which

---

[3]Humphries, 372 F.3d at 660; United States v. Oglesby, 597 F.3d 891, 895 (7th Cir. 2010); United Sttes v. Briggs, 720 F.3d 1281, 1289 (10th Cir. 2013); United States v. Padilla, 548 F.3d 179, 189 (2d Cir. 2008); cf United States v. Dupree, No. RDB-13-00256, 2013 WL 4499037, at *1-2 (D. Md. Aug. 20, 2013) (finding that where many of the instances of security checks referred to by the officer as security checks appeared to coincide with the defendant touching his stomach or his leg which was not sufficient to support a finding of reasonable suspicion).

13

reasonably indicated to Burke that Richardson might have a weapon in his front left pocket and was completing a security check. Thus, this factor is also a significant factor in determining whether Burke had reasonable suspicion to complete an investigative stop.

E.   Totality of the Circumstances

Richardson relies on the Fourth Circuit's decision in Massenburg in arguing that the defendant's conduct in this case was not enough to arise to particularized reasonable suspicion. In Massenburg, the Fourth Circuit found that a defendant's conduct did not arise to particularized reasonable suspicion even though the defendant had refused to be searched after a "shots fired" call had been received, the defendant was in the proximate vicinity of the shots, and the defendant acted somewhat nervous and would not look at the officer. Massenburg, 654 F.3d at 491. This Court disagrees with Richardson and finds that the application of Massenburg does not lead this Court to find that reasonable suspicion did not exist in this case.

As stated above, this Court has found that all four factors designated by the magistrate judge are relevant to a determination of whether Burke had a particularized reasonable suspicion. After 1:00 a.m., in an area known for drug activity, prostitution, and public urination, Burke observed Richardson and Estep walk into a dark alley. When Burke approached the two, he saw Richardson in

14

the back of the alley with his back to him and upon questioning him what he was doing Richardson stated that he was "taking a piss." Further, Burke noticed that as Richardson approached him, he continuously reached into or toward his left pocket. This series of events led Burke to stop-and-frisk Richardson.

Again, this Court must look at the "'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Mayo, 361 F.3d at 805 (citations omitted). Further, "due weight must be given, not to [an officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. at 27 (citation omitted).

In this case, Burke could reasonably rely on his experience that because of the time of night, after 1:00 a.m., and Richardson's presence in a high crime area at that time, that criminal activity might occur. These factors coupled with Richardson's admission that he had just violated an ordinance by urinating in public arose to the level of a reasonable suspicion that criminal activity had just taken place. Further, Richardson's continual movement toward his left pocket would also, coupled with the other three factors, be sufficient to allow Burke to reasonably believe that Richardson was in possession of a weapon. Burke's

15

Terry stop-and-frisk was therefore, in light of his experience and knowledge, proper under the law.

The evidence in this case provides more suspicion of criminal activity than in Massenburg. Here, Richardson was in a high crime area late at night, had just admitted to urinating in public, and was continuously making "security check" type movements. Massenburg did not involve a defendant who admitted to just committing a crime or making movements more than just looking away from the officer. The evidence in this case thus amounts to more than that provided in Massenburg. As such, based on this Court's analysis above, the totality of the circumstances arises to a finding that Burke had a particularized reasonable suspicion to support his Terry stop-and-frisk of Richardson.

## V. Conclusion

For the above stated reasons, this Court AFFIRMS AND ADOPTS the magistrate judge's report and recommendation in its entirety and OVERRULES defendant's objections thereto. Accordingly, defendant's motion to suppress statements is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     March 12, 2015

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE